Michael Lynn GOBLE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 92A03–0103–CR–95.

Court of Appeals of Indiana.

Feb. 8, 2002.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Michael Goble, challenges his convictions for two counts of Perjury,[1] a Class D felony, and two counts of Filing a Fraudulent Record,[2] a Class A misdemeanor. Goble presents three issues for our review:

(1) Whether the trial court abused its discretion in refusing Goble's midtrial request to abandon his pro se defense and reassert his right to counsel;

(2) Whether there was sufficient evidence to sustain Goble's perjury convictions; and

(3) Whether Goble's convictions for filing a fraudulent record were contrary to law.

We reverse.

In 1998, Whitley County Consolidated Schools hired Schrader Real Estate & Auction ("Schrader"), a licensed realtor auctioneer, to take bids for the sale of Thorncreek Elementary School, for which the school corporation no longer had any use. Schrader received seven bids for the property, including a $20 gold piece from Goble, which he submitted on behalf of the Body of Christ Church. On November 16, 1999, the school board accepted a bid of $63,400 from the Wabash Book Company of Fort Wayne. Earlier that day, Goble filed a "Common Law Lien—Pursuant to Indiana Code 32–8–39–1" with the Whitley County Recorder. Under oath, Goble signed the document as "Beloved," in his capacity as pastor and trustee for Body of Christ Unlimited. Appellant's Appendix at 922. As the legal basis upon which Goble asserted his right to hold the common law lien, Goble stated that he had "purchased" the property "with 'Best Offer' and 'best bid' by payment in full . . . of a Twenty Dollar Liberty Gold Coin . . . contained in the sealed bid delivered by [Goble] pursuant to the advertised auction Notice" and that "agents of Whitley County Consolidated Schools Corporation caused to be stolen on or about the morning of November 12, 1999, . . . all said Property. . . ." Id. at 920. Based on this statement, the State filed an information on February 15, 2000, (Cause No. 34) charging Goble with perjury and filing a fraudulent record.

In 1999, Whitley Superior Court Judge Michael Rush presided over an unrelated case involving Goble. For undisclosed reasons, Judge Rush subsequently recused himself from Goble's case. On December 17, 1999, after Judge Rush had recused himself, an order to appear at a hearing scheduled for January was sent to Goble with Judge Rush's signature stamp affixed to it. As a result of this order, Goble filed with the Whitley County Recorder a common law lien against Judge Rush's house. Goble signed the document under oath as "Michael Lynn., goble." Id. at 923. As

---

1. Ind.Code § 35–44–2–1 (Burns Code Ed. Repl.1998).

2. Ind.Code § 26–1–9–508(f) (Burns Code Ed. Repl.1999) (repealed 2001).

the legal basis for the lien, Goble stated in the body of the document:

> "This Claim is made in good faith for the reason that Michael Lynn., goble believes that facts are that on December 22, 1999, Michael D. Rush issued an invalid Order by Trespass on the case in CAUSE NO. 92D01–9507–DF–389 by judge ... FRAUD upon the Court inasmuch as an ORDER TO APPEAR, January 4, 2000 at 8:30 is as a matter of Record without authority of a "Qualified" Judge and by a judge ... acting in administrative, or ministerial capacity as a common outlaw in place of the special judge appointed by the Indiana Supreme Court due to the fact also that the commission of Michael D. Rush was and still is withdrawn from said CAUSE. That these facts constitute a Trespass of Tort against the Civil Liberties of Michael Lynn., goble. Wherefore, in such capacity, Michael D. Rush has no immunity from prosecution by Michael Lynn...." *Id.* at 923.

This statement served as the basis for the information filed by the State on February 18, 2000, (Cause No. 39) charging Goble with perjury and filing a fraudulent record.

On December 15, 2000, the two causes were consolidated for trial. Following a jury trial, Goble was found guilty of two counts of perjury and two counts of filing a fraudulent record. Under Cause No. 34, the trial court sentenced Goble to one and a half years for perjury and one year for filing a fraudulent record, sentences to run concurrently. Under Cause No. 39, the trial court sentenced Goble to one and a half years for perjury and one year for filing a fraudulent record, to be served concurrently. The trial court further ordered that the sentences imposed under each cause be served consecutively, for an aggregate sentence of three years.

I

*Standby Counsel*

■ Goble argues that he was denied his constitutional right to counsel when the trial court refused his mid-trial request to have his standby counsel conduct the direct examination of him, argue his motion for judgment on the evidence, and present the closing argument. "The Sixth Amendment of the United States Constitution and Article I, § 13 of the Indiana Constitution guarantee the right to counsel at any critical stage of prosecution where counsel's absence 'might derogate from the accused's right to a fair trial.'" *Koehler v. State*, 499 N.E.2d 196, 198 (Ind.1986) (quoting *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). The right to proceed pro se is correlative to this constitutional right. *Id.*

In the present case, at a preliminary hearing on February 21, 2000, the trial court appointed J. Brad Voelz, a public defender, to represent Goble at trial. At a pre-trial conference on March 20, 2000, Mr. Voelz informed the trial court that Goble wanted to represent himself. Goble clarified for the court that he wanted Mr. Voelz to serve as standby counsel, to assist him with his investigation and in understanding the law.[3] The trial court then appointed Mr. Voelz as standby counsel and directed Goble to advise the court prior to trial as to whether he or Mr. Voelz would conduct the jury trial.[4] Goble filed

---

**3.** Goble told the trial court that he wanted Mr. Voelz to help him with pre-trial preparation of motions and in obtaining discovery, but reiterated that Mr. Voelz would not be responsible for any of the motions which Goble himself might submit.

**4.** The trial court clarified Mr. Voelz's role as standby counsel:

all motions on his behalf, conducted twenty to thirty depositions, and represented himself, with Mr. Voelz present as standby counsel, at all hearings prior to the jury trial and at the jury trial.

At trial, Goble presented an opening statement, cross-examined the State's three witnesses, and conducted direct examination of his witnesses. At the end of the lunch break on the second day of trial, Goble informed the trial court that he was the last witness to testify and requested that Mr. Voelz be permitted to take over his case because of the difficulty inherent in questioning himself. The State objected, and the trial court subsequently denied Goble's request. Goble called several more witnesses on his behalf and then took the stand and testified. At the conclusion of his testimony, Goble rested his case, moved for judgment on the evidence, and then asked the trial court if Mr. Voelz could argue the motion, asserting that he was too tired to continue. The trial court again refused Goble's request and after hearing Goble's argument, denied the motion for judgment on the evidence.

■ It is within the trial court's discretion to determine whether a defendant may abandon his pro se defense after trial has begun and reassert his right to counsel. *Koehler*, 499 N.E.2d at 198–99. We will reverse only if we conclude that the trial court abused its discretion. *Id.* In

*Koehler*, our Supreme Court identified five factors to be considered by a trial court in order to exercise meaningful discretion in ruling on defendant's request to change from self-representation to counsel-representation by standby counsel.[5] Specifically, the trial court should consider: (1) the defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth in defendant's request, (3) the length and stage of the trial proceedings, (4) any disruption or delay in the trial proceedings which might be expected to ensue if the request is granted, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney. *Id.* at 199. Upon making such a request, a defendant is entitled to a consideration of the *Koehler* factors. *Dowell v. State*, 557 N.E.2d 1063, 1068 (Ind.Ct.App.1990) (holding that trial court abused its discretion by summarily denying defendant's request for stand-by counsel to conduct closing statements), *trans. denied, cert. denied*, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991).

■ Here, the trial court explained its reasons for denying Goble's request. The trial court clearly considered the length and stage of the proceedings, recognizing that the trial was almost complete when

"Mr. Goble you can contact Mr. Voelz as you feel necessary to gain [advice]. I'll allow you to file your own motions. Mr. Voelz, you will not have to review or approve those motions and I will not, they will not be considered motions which you would have anything to do with unless you were to sign a motion. I'll also have you available as standby counsel to consult with [Goble] during a trial. [Goble] will need to make a decision before the trial date if [he] want[s] Mr. Voelz to try the case.... [Mr. Voelz] will not be your co-counsel. [Mr. Voelz] will either be your attorney or he will be standby counsel to be there to advise

you as you feel necessary." Transcript at 12–13.

5. It is apparent from the treatment of the issue in *Koehler*, that although a court may have appointed standby counsel for a defendant, that defendant is representing himself pro se. Standby counsel is not considered to have been appointed to represent the defendant. Defendant is entitled only to confer with standby counsel. He is not entitled to have standby counsel actively participate in the proceedings.

Goble requested that Mr. Voelz be permitted to take over.[6] Further, in its statement, the trial court seemed to indicate that under the circumstances, Goble had done rather well representing himself. The trial court acknowledged that Goble had prepared his case, questioned witnesses, and posed objections, some of which had been sustained. From this, we can discern the trial court's consideration of Goble's effectiveness in representing himself if he were made to continue.

■ As to the other *Koehler* factors,[7] we note that Goble's reason for requesting counsel representation at this late stage in the trial appears to be legitimate, i.e. the difficulty inherent in questioning himself. Further, it is not clear whether the trial court even considered what disruption or delay, if any, could have been reasonably expected if Goble's request would have been granted. The trial court may have believed that because Mr. Voelz was present at only one of twenty or so depositions which Goble conducted, Mr. Voelz was not prepared to take over as counsel for Goble, and that such may have caused a delay. However, our review of the record indicates that any disruption or delay would likely have been minimal. The record reveals that Mr. Voelz informed the trial court that he felt obligated, as standby counsel, to take over if Goble requested. Mr. Voelz further stated that he would not decline Goble's request to take over, so

long as Goble made the request to the court. Moreover, the trial court itself noted that Mr. Voelz had been present and very helpful to Mr. Goble throughout the entire trial, making it more likely that Mr. Voelz was familiar with Goble's defense and thus could immediately and adequately step in and take over.

■■ Applying the *Koehler* factors to the case at bar, we recognize that this is a close case. However, we note that Goble was never advised of the dangers and disadvantages of waiving his right to counsel. When a defendant elects self-representation, the trial court must elicit a knowing, intelligent, and voluntary waiver of the right to counsel. *McKeown v. State*, 556 N.E.2d 3, 6 (Ind.Ct.App.1990), *trans. denied.* The trial court must also establish a record demonstrating that the defendant was made aware of the nature, extent, and importance of the right to counsel and the dangers and disadvantages of waiving it. *Id.* at 6; *Dowell*, 557 N.E.2d at 1066. "Waiver of assistance of counsel may not be inferred from a silent record." *Dowell*, 557 N.E.2d at 1066. *See also Maisonet v. State*, 579 N.E.2d 660, 663 (Ind.Ct.App.1991)(Staton, J., dissenting).

Here, in denying Goble's request for standby counsel to take over the trial, the trial court stated that "Mr. Goble [had] been advised and informed that it would be to his disadvantage to conduct the trial

6. Specifically, the trial court stated, "We're now in the second day, after noon, or should I say the afternoon on the second day of the jury trial. The State has completely presented all of it's [sic] evidence and rested. The defendant has called all of [his] witnesses except one and that is Mr. Goble if he chooses to testify." Transcript at 427.

7. We note that Goble had a history of requesting counsel-representation at the last minute. However, there is nothing in the record

which indicates that the judge who presided over Goble's trial knew about Goble's history. It was during a pre-trial conference when Mr. Voelz informed the trial court that in another case, he had been appointed standby counsel for Goble, and that as the jury was brought into the court room in that case, Goble said that he could not go through with it and asked Mr. Voelz to conduct the jury trial. We note, however, that the judge who conducted the pre-trial conference was not the same judge who presided over Goble's trial.

himself without a full counsel" and "[t]hat it would be to his advantage to be represented fully by an attorney." Appellant's App. at 984–85. However, we can find no such advisements in the record.[8] Our analysis of the *Koehler* factors, in conjunction with the trial court's failure to advise Goble of the dangers and disadvantages of self-representation, leads us to conclude that the trial court violated Goble's Sixth Amendment right to counsel, and thus, Goble's convictions must be vacated.

██ We note, however, that although double jeopardy bars retrial when a conviction is reversed due to insufficient evidence, it does not bar retrial when a conviction is reversed due to trial error. *Sigler v. State*, 733 N.E.2d 509, 512 (Ind. Ct.App.2000), *trans. denied.* Thus, although we have reversed Goble's convictions because of the trial court's error in refusing to permit standby counsel to take over, retrial on all charges could be sought by the State. We therefore address the merits of the other issues Goble has presented to this court.

## II

### *Perjury*

██ Goble argues that there was insufficient evidence to support his convictions for perjury because the State failed to prove that he knew the statements he made in the liens were false. To convict Goble of perjury, the State has to prove beyond a reasonable doubt that Goble "[made] a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true." I.C. § 35–44–2–1(a)(1). Knowledge is a mental state of the actor; thus the trier of fact must infer its existence. *Jernigan v.*

State, 612 N.E.2d 609, 613 (Ind.Ct.App. 1993), *trans. denied.* In determining whether Goble knowingly made false statements, the trier of fact must rely on reasonable inferences based on the surrounding circumstances. *See id.*

██ In the lien Goble filed against the school property, Goble stated that he had "purchased" the property with his $20 gold piece, which he asserted was the "best bid" received by the school corporation. Appellant's App. at 920. Goble, believing that the gold standard is the law of the land testified that,

> "my belief that by use of the twenty dollar Liberty gold coin standard dollar in that denomination presented with the bid being, was a full payment best bid is absolutely, no doubt in my mind, absolute, for sure the highest bid and the best payment that could ever have been received, someone could have outbid me if they had used more of that specie." Transcript at 445–46.

From this evidence, a jury could reasonably infer that Goble's belief in the gold standard is so beyond the reality of today's society that Goble knew that he had not "purchased" the school's property with his bid of a $20 gold piece.

██ In the lien filed against Judge Rush's house, Goble stated that he believed that Judge Rush had acted without authority and that such constituted a tort against him and that Judge Rush was not immune from prosecution. The State asserts that these were false, material statements of fact which Goble knew to be false. We do not agree. Generally, the alleged false statement giving rise to a perjury conviction must be "a statement of fact and not a conclusion, opinion, or de-

8. The record is complete with transcripts from all recorded hearings that were logged in the chronological case summary.

duction from given facts." *Blackburn v. State,* 495 N.E.2d 806, 808 (Ind.Ct.App. 1986), *trans. denied.* Furthermore, "[a] statement as to the legal effect of certain facts, or mere conclusion of law, ordinarily will not constitute perjury." *Id.* We conclude that Goble's statements that Judge Rush "issued an invalid Order by Trespass," that Judge Rush was "acting in administrative, or ministerial capacity as a common outlaw in place of the special judge," and that Judge Rush "in such capacity, . . . ha[d] no immunity from prosecution," are more properly construed as legal conclusions and not factual statements. Appellant's App. at 923. Therefore, such statements may not serve as the basis for a perjury conviction.

### III

#### *Filing Fraudulent Records*

Goble argues that his convictions for filing fraudulent records must be vacated because attempts to create liens on real estate were statutorily exempted from prosecution for this offense. The State agrees.

 Here, the charges against Goble for filing fraudulent records are based upon a violation of I.C. § 26–1–9–508(f). However, Indiana Code § 26–1–9–104(j) (Burns Code Ed. Repl.1999) [9] provides that "IC 26–1–9 does not apply . . . to the creation or transfer of an interest in or lien on real estate." There is no dispute that the documents Goble filed with the Whitley County Clerk purported to create common law liens against real estate, i.e. the school's property and Judge Rush's house. Because I.C. § 26–1–9 does not apply to liens on real estate and Goble's filings were an attempt to place liens on real

estate, Goble cannot be prosecuted for filing fraudulent records under I.C. § 26–1–9–508(f).

The judgment of the trial court is reversed.

NAJAM, J., and MATTINGLY–MAY, J., concur.

---

9. This section has since been recodified as Ind.Code § 26–1–9.1–109 (Burns Code Ed. Supp.2001).