**Dayon M. MILLER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 77A04–0207–CR–313.

Court of Appeals of Indiana.

May 22, 2003.

John Pinnow, Greenwood, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MATTINGLY–MAY, Judge.

Dayon Miller appeals his conviction of battery with a deadly weapon, a Class C felony.[1] He raises three issues, two of which we address:[2]

1. Whether the trial court adequately advised Miller of the dangers and disadvantages of representing himself in order to ensure he knowingly and intelligently waived his right to counsel; and

---

1. Ind.Code § 35–42–2–1(a)(3).

2. Miller also raised whether his institutional punishment for battery on a correctional officer and his subsequent conviction of and sentence for battery with a deadly weapon amounted to multiple punishment in violation of his right not to be subjected to double jeopardy. *See Hudson v. United States*, 522 U.S. 93, 96, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (holding federal double jeopardy clause is not a bar to the later criminal prosecution when administrative proceedings are civil, not criminal, and applying a seven-part test to determine when a civil penalty may be considered a criminal punishment). Because we vacate Miller's conviction, we need not address that issue.

2. Whether the trial court abused its discretion in declining to allow standby counsel to conduct *voir dire*.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

On July 25, 2001, Paul Clark was a guard at the Wabash Valley Correctional Facility. Miller approached Clark from behind and stabbed him in the back of the head with a "shank," saying "this is for talkin' all that shit." (Tr. at 438, 441.) Miller continued to stab Clark. Clark sustained puncture wounds to the right side of his neck, the area above the right eye, his lower chest, and the middle of his back.[3] After he was subdued, Miller stated "this will show them I ain't no bitch." (*Id.* at 371–72.) As he was being led out, Miller yelled "tell Buddy I got him, I took care of that." (*Id.* at 335.)

Miller was charged with Count I, attempted murder, a Class A felony,[4] Count II, battery by means of a deadly weapon, a Class C felony,[5] and Count III, being a prisoner in possession of a dangerous device or material, a Class B felony.[6] Prior to trial the State dismissed Count III.

At his initial hearing, the trial court advised Miller of his right to be represented by counsel. Miller requested representation, and Richard Bramer was appointed as defense counsel. At a subsequent hearing, Miller made an oral motion to represent himself:

Miller: I wanna make a oral motion to, uh, willingly and voluntarily, uh, waive, uh, effective assistance of counsel right. And I wish to represent my case in my own behalf. And, uh, the reasons for this is that, uh, the deposi-

tions that I've been requesting my, my attorney to, uh, observe and to, uh, survey for my own understandings of the case so I can assist him and to proficiently cultivating my case and, uh, advocating my cause in a proficient manner. He has failed to do that ... I wanted him to object to this, uh, but he's failed to do that. But, uh, not only, uh, not only that it, it's like, uh, it's prejudicing me also because according to my six amendment right I have the right to, uh, for, for my attorney to, uh, advocate my cause. Not his cause, my cause. My perception and truth of this case. He owes me according to *[Strickland] v. Washington* a loyalty to me and also a loyalty of my cause. He has failed to do that also. And the reasons stated is that today, I just been, uh, presented with, uh, documents, my depositions today, just roughly an hour ago. Without having any time to truly sit down with my attorney and to discuss the matters that I believe needs to be targeted in this case, which is a whole bunch of contradictory statements by the, uh, State's witnesses that I wanted to attack. He does not believe this is creditable to my cause, has no weight of evidence. Which I see contrary. This is a conflict of interest.... He told me he believes that I need to take this eight-year plea bargain. And I told him I don't believe I should be found guilty of anything higher than eight-year plea, uh, eight years anyway. So I don't believe this is in my best interest to take a eight-year plea bargain. Now, my attorney after speaking with him for a while, he

---

3. Clark's puncture wounds were superficial and he required no stitches.

4. Ind.Code §§ 35–41–5–1, 35–42–1–1.

5. Ind.Code § 35–42–2–1(a)(3).

6. Ind.Code § 35–44–3–9.5(1).

began to become mendacious ... I just wanna be explicit in the reasons why so that when if, if, if I'm denied willingly and voluntarily forfeiting my lawyer as my representation that on, on appeal or whatever, these, all these facts can be known[.]

\* \* \*

Court: Now, Mr. Miller, um, had a chance to research, read the law. You know, this last minute thing that you've brought up here kinda, you know, it's new to the Court. Uh, had you done that week or two ago, coulda answered some more questions, uh, that may have come up, but, um, it appears that, you know, the question is, as you said earlier, you have the right to waive your counsel, to represent yourself. However, um, there's also question about stand-by counsel. . . .

\* \* \*

Court: You understand you have the right to a lawyer in this matter?

Miller: Yes, sir.

Court: And, uh, do you want a lawyer?

Miller: Uh, no, sir.

Court: Uh, you understand that, that if you can't afford one the Court would appoint one for ya and has done so in this case that you're askin' to, uh, to represent yourself? Is that right?

Miller: Yes, sir.

Court: O.K. Um, you think you need a lawyer to present your side of the case?

Miller: No, sir.

Court: Now, Mr. Bramer's gonna be appointed as a stand-by counsel to represent you.

(*Id.* 55–74.) The trial court also explained to Miller the role of stand-by counsel.

"He's, he's stand-by counsel and, you now, if you want him to do something you ask him to do and then we'll make a decision on that. In other words if you want him to help pick the jury he can do that." (*Id.* at 75.)

On the morning of trial, Miller requested that his stand-by counsel be allowed to conduct *voir dire.*

Miller: My understanding, this is, uh, we stated, you stated on record last time I was here that, uh, Mr. Bramer could help me with jury selection and all this. And this—

Court: Well, since then I've read cases. I've changed my mind.

(*Id.* at 107.) The trial court told Miller he could either represent himself with Mr. Bramer as stand-by counsel or accept Mr. Bramer's representation. Miller stated "I want to represent myself and he's my standby counsel." (*Id.* at 113.)

Miller conducted *voir dire,* opening statement, direct and cross-examination of witnesses, and final argument. The jury returned a verdict of guilty to Count II, battery by means of a deadly weapon, but was deadlocked on Count I, the charge of attempted murder.

### *DISCUSSION AND DECISION*

1. *Waiver of Right to Counsel*

■ Miller contends the trial court did not adequately advise him of the dangers and disadvantages of representing himself. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Because the "average defendant does not have the professional legal skills to protect himself" at

trial, a defendant's choice to appear without professional counsel must be made intelligently. *Johnson v. Zerbst,* 304 U.S. 458, 462–63, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

 The right to counsel can be waived only by a knowing, voluntary and intelligent waiver of the right. *Dowell v. State,* 557 N.E.2d 1063, 1065–66 (Ind.Ct. App.1990). When a defendant asserts the right to self-representation, the court should tell the defendant of the "dangers and disadvantages of self-representation." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). There are no specific rules as to the inquiries the trial court must make before determining the defendant's waiver of the right to counsel is knowing and voluntary. *Leonard v. State,* 579 N.E.2d 1294, 1296 (Ind. 1991). This determination must, however, be made with the awareness that the law indulges every reasonable presumption against a waiver of this fundamental right. *Zerbst,* 304 U.S. at 464, 58 S.Ct. 1019.

Recently, in *Poynter v. State,* 749 N.E.2d 1122, 1127–28 (Ind.2001), our supreme court adopted four factors to consider when determining whether a waiver is knowing and intelligent:

> (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se.

In making this analysis, our supreme court noted that the trial court

> is in the best position to assess whether a defendant has knowingly and intelligently waived counsel, and we will most likely uphold the trial judge's decision to honor or deny the defendant's request to represent himself where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion about the defendant's understanding of his rights and voluntariness of his decision.

*Id.* at 1128.

 However, we review *de novo* a trial court's finding that the defendant waived the right to counsel. *Balfour v. State,* 779 N.E.2d 1211, 1216 (Ind.Ct.App. 2002). Our review of the record in light of the four *Poynter* factors leads us to conclude that the trial court failed to determine whether Miller's waiver of his right to counsel was knowing and intelligent.

The trial court made no inquiry into Miller's decision to proceed *pro se.* The trial court acknowledged Miller's right to proceed *pro se,* then asked him four questions:

> Court: You understand you have the right to a lawyer in this matter?
>
> Miller: Yes, sir.
>
> Court: And, uh, do you want a lawyer?
>
> Miller: Uh, no, sir.
>
> Court: Uh, you understand that, that if you can't afford one the Court would appoint one for ya and has done so in this case that you're askin' to, uh, to represent yourself? Is that right?
>
> Miller: Yes, sir.
>
> Court: O.K. Um, you think you need a lawyer to present your side of the case?
>
> Miller: No, sir.

(Tr. at 74.) These questions do not reflect an inquiry into Miller's decision to proceed *pro se.* Miller's rambling explanation of his disagreements with his counsel and his view of his case cannot substitute for the information that would be elicited by a trial court's reasoned inquiry into a defen-

dant's decision to waive this very important right.

The second *Poynter* consideration is "other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation." 749 N.E.2d at 1127. The trial court did warn Miller that he might incriminate himself by some of the questions he asked. After warning him, the trial court stated: "So you may have to make a decision whether or not you want your stand-by counsel to ask questions and, if you have those questions you may wanna write 'em out before the trial." (Tr. at 100.) There was no discussion by the trial court as to any of the other dangers and disadvantages of self-representation.[7] Miller was never advised, for example, that he would have to follow the procedural and evidentiary rules as if he were an attorney, *Van Donk v. State,* 676 N.E.2d 349, 351 (Ind.Ct.App.1997), nor that it was disadvantageous to represent himself. *Dowell,* 557 N.E.2d at 1065–66.

The third *Poynter* consideration, that of Miller's legal background and experience, was not addressed below. The trial court did not question Miller with respect to his experience, although it is apparent Miller had some experience with the legal system as he was incarcerated at the Wabash Correctional Facility.

The fourth *Poynter* consideration, the context of the defendant's decision to proceed *pro se,* is more problematic. Miller told the jury during his opening statement:

[P]lease be patient with me throughout the whole trial. I've written down various questions. This is my first time and this is going to be difficult because I really don't have no experience at this.

But I believe the only way I can represent myself and the truth be told is no other better way than me, myself, because I was actually there and I know the intent that I possess. And so I believe that I would be the best advocate in my own cause and to show that, uh, this is what I've written down to show in my behalf.

(Tr. at 280.)

Again, during final argument, Miller stated:

Like I said, the reasons why I did represent myself is because only I can articulate exactly what I intended to do in this situation. Only I know exactly what happened in this situation because I was present. Mr. Bramer is advisory counsel in this case, but I know Mr. Bramer was not there. I know Mr. Bramer does not know exactly what goes on in my mind, so I chose to represent myself in my behalf.

(*Id.* at 576.)

These statements make it clear that Miller felt there was a strategic advantage to self-representation. However, these statements were made without the benefit of having all of the pitfalls and dangers of self-representation explained to him. The State contends "waiver will more likely be found where a defendant's desire to represent himself appears tactical or strategic in nature." *Poynter,* 749 N.E.2d at 1128 n. 6. However, there must first be some minimal effort by the trial court to ensure the defendant truly understands the risks of proceeding *pro se.*

We do not take this decision lightly. We understand that after remand to the trial court, and after the proper warnings have

---

**7.** It is apparent that Miller did not understand the trial court's "warning," as he admitted during opening statement that he should be convicted not of attempted murder, but of battery with a deadly weapon. "Uh, what charge do I believe I'm guilty of though? In my point of view, I believe Battery Resulting in Bodily Injury to Mr. Clark." (Tr. at 279.)

been given, Miller might again decide to proceed *pro se*. However, this right is important enough that we believe Miller deserves to make this decision fully informed.

### 2. *Stand-by Counsel*

 Because Miller might again decide to proceed *pro se*, we address whether in light of the facts of this case the trial court erred in not allowing Mr. Bramer, Miller's stand-by counsel, to conduct *voir dire*. Generally, a defendant has no right to hybrid representation. *Sherwood v. State*, 717 N.E.2d 131, 135 (Ind.1999). As a result, the trial court is vested with the discretion to deny such a request. *Averhart v. State*, 470 N.E.2d 666, 689 (Ind. 1984).

This case presents a little more difficulty, because the trial court advised Miller before the first day of trial that:

He's ... stand-by counsel and, you know, if you want him to do something you ask him to do and then we'll make a decision on that. In other words if you want him to help pick the jury he can do that. If you want him to make an opening statement he can do that. If you want him to make a closing statement he can do that. If you want him to cross-examine witnesses he can do that. Otherwise, you will be doing that.

(Tr. at 75.)

On the first day of trial, however, when Miller asked that his stand-by counsel be allowed to conduct *voir dire*, the trial court denied his request. The trial court stated: "Well, since then I've read cases. I've changed my mind." (*Id.* at 107.)

 In *Koehler v. State*, 499 N.E.2d 196 (Ind.1986) our supreme court identified five factors to be considered by a trial court in order to exercise meaningful discretion in ruling on a defendant's request to change from self-representation to representation by stand-by counsel. The trial court should consider: (1) the defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth in defendant's request, (3) the length and stage of the trial proceedings, (4) any disruption or delay in the trial proceedings that might be expected to ensue if the request is granted, and (5) the likelihood the defendant could effectively defend against the charges if required to continue to act as his own attorney. *Id.* at 199. Upon making such a request, a defendant is entitled to a consideration of the *Koehler* factors. *See Dowell*, 557 N.E.2d at 1068 (trial court abused its discretion by summarily denying defendant's request for stand-by counsel to conduct closing statements). The record does not reflect that the *Koehler* factors were considered in ruling on Miller's request, nor that granting Miller's request would have disrupted or delayed his trial.

In *Goble v. State*, 766 N.E.2d 1, 5 (Ind. Ct.App.2002), we recently found an abuse of discretion in the denial of Goble's request that stand-by counsel take over during trial. The trial court stated that "Mr. Goble [had] been advised and informed that it would be to his disadvantage to conduct the trial himself without a full counsel" and "[t]hat it would be to his advantage to be represented fully by an attorney." *Id.* at 7. There were no such advisements in the record. We found after reviewing the *Koehler* factors in light of the trial court's failure to advise Goble of the dangers and disadvantages of self-representation that the trial court violated Goble's Sixth Amendment right to counsel.

 Here we have a similar situation, complicated by the trial court's unexplained reversal of its prior representation

to Miller. A *pro se* defendant, no less than any other litigant, should be able to rely on the trial court's representations. In this instance, refusing Miller's request that stand-by counsel conduct *voir dire* was error.[8]

Reversed and remanded.

BROOK, C.J., and FRIEDLANDER, J., concur.

8. We feel compelled to address two additional actions on the part of the trial judge. During opening statement, Miller objected. The trial court stated: "You can't object during opening statement." (Tr. at 273.) This is incorrect. *See Montgomery Ward, Inc. v. Koepke,* 585 N.E.2d 683, 687 (Ind.Ct.App.1992) (no error in sustaining an objection during opening statement). In addition, during the questioning of Dr. Jaffri, the trial court objected to some of Miller's questions on behalf of the State:

> Well, I'm going to object here. The State evidently doesn't want to object in this case because you've already asked and answered that question. So, I'm going to start objecting on behalf of the State here.... So, I don't see any reason to delay the process by asking the same questions over and over again. If you start that I'm going to object on the behalf of the court just so that we can speed the process up so we don't have to go through the same questions over and over again.

(Tr. at 432–33.) The judge made a number of other objections during Miller's questioning of the witness.

It was improper for the trial judge to insert himself into the proceedings to such a degree.

The trial court has a duty to remain impartial and refrain from unnecessary remarks. *Norcutt v. State,* 633 N.E.2d 270, 273 (Ind.Ct.App. 1994). However, it also has a duty to conduct the trial in a manner calculated to promote the ascertainment of truth, fairness, and economy of time. *Id.* Within the scope of this duty is the authority to make impartial statements about the general admissibility of evidence. *Id.* The jurors' customary respect for the judge can lead them to accord great and perhaps decisive significance to the judge's every word and intimation. It is therefore essential that the judge refrain from any actions indicating any position other than strict impartiality. *Abernathy v. State,* 524 N.E.2d 12, 13 (Ind.1988).

In *Norcutt,* we determined the trial court was merely attempting to ensure that the case would progress in an expeditious manner and its remarks were acceptable because they were "not made to intimidate either party." 633 N.E.2d at 274. Here, by contrast, the judge's objections "on behalf of the State" do not indicate impartiality and might be particularly intimidating to a *pro se* litigant.