## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 11 2018, 7:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

T. Andrew Perkins
Peterson Waggoner & Perkins, LLP
Rochester, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joshua Givens,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 11, 2018

Court of Appeals Case No.
25A03-1708-CR-1760

Appeal from the Fulton Circuit Court

The Honorable A. Christopher Lee, Judge

Trial Court Cause No.
25C01-1701-F6-58

**Baker, Judge.**

[1] Joshua Givens appeals his conviction for Level 6 Felony Unlawful Possession of a Syringe,[1] arguing that he was denied his Sixth Amendment right to counsel when the trial court granted his request to proceed pro se. Finding no error, we affirm.

## Facts

[2] On January 24, 2017, the State charged Givens with Level 6 felony unlawful possession of a syringe. An initial hearing took place that same day, during which Givens told the trial court that he could read, write, and understand English; that he completed school through the eleventh grade; that he was not under the influence of drugs or alcohol; that he understood the charge against him; and that he understood the potential penalty range. The trial court also advised Givens that he had a right to be represented by an attorney and that he could proceed without an attorney. The trial court asked Givens whether he had any mental or physical disabilities that prevented him from working; Givens replied, "Education." Tr. p. 8. Givens stated that he wanted a public defender, and he was appointed one.

[3] On March 13, 2017, Givens pleaded guilty to the charge. During his guilty plea hearing, Givens stated that he was of sound mind, that he was not under the influence of drugs or alcohol, and that the decision to plead guilty was his own

---

[1] Ind. Code § 16-42-19-18(a)(1).

choice. He also assured the trial court that he understood the nature of the charge and the potential penalty range. The trial court accepted his guilty plea.

[4] On April 7, 2017, Givens moved to withdraw his guilty plea, and the trial court granted his motion. On May 5, 2017, Givens filed a motion to proceed pro se and to dismiss his public defender. During a June 12, 2017, hearing, the following exchange took place:

> The Court: . . . You plan on representing yourself here?
>
> The Defendant: Yes, sir.
>
> The Court: One more time.
>
> The Defendant: Yes, sir.
>
> The Court: You're going to represent yourself?
>
> The Defendant: Yes.
>
> The Court: There are perils and risks to self-representation, and I'm assuming that you don't have any legal education. And if you're going to represent yourself that means that I'm going to be looking to you to present evidence, which you think is appropriate. You're going to need to know how to present that evidence. If the State wants to produce evidence, which you find objectionable, you're going to need to know how to formulate objections in a legal sense, and you're going to have to question witnesses, give opening statements, and so forth. Do you understand that?

The Defendant:  Yes, sir.

The Court:  All right.  And knowing all of that you still want to proceed without a lawyer?

The Defendant:  Yes, sir.

The Court:  Anybody threaten you in any way to get you to make that request?

The Defendant:  No, sir.

The Court:  Anybody promise you anything to get you to make you to get that request?

The Defendant:  No, sir.

The Court:  Do you understand that we have a trial set here—a bench trial?

The Defendant:  Yes.

The Court:  All right.  And that's set on July the 6th, I think. And then you're going to represent yourself in that trial?

The Defendant:  Yes, sir.

*** 

The Court: . . . I'm contemplating if we were going to go forward with a jury trial I would keep [the public defender] as standby

counsel. I don't know that I need to do that in this bench trial scenario. . . .

Public Defender: . . . In talking with [Givens] I don't think he needs me, but, you know, I'm happy to be here with him.

The Court: All right. If we were doing a jury trial I would require you to be here, but he's indicated he wants to represent himself. I questioned him about that, and I think he understands the risks associated with that.

Tr. p. 25-28.

[5] On June 30, 2017, Givens filed a motion for discovery, asking for "a copy of police reports, body cam footage evidence, and/or any other depositions, paperwork, etc." Appellant's App. Vol. II p. 32. On July 6, 2017, Givens filed a "motion for affidavit of indigency." *Id.* at 38. That same day, a bench trial took place. Before it started, the trial court acknowledged Givens's motions and asked for clarification about his affidavit. Givens explained that it was "just in case I need any paperwork, transcripts, a copy of anything that I don't have money to pay for those transcripts." Tr. p. 31. The trial court asked whether Givens had changed his mind about representing himself; Givens replied, "No, no." *Id.* at 32. The trial court then asked Givens whether he had received a copy of the police report. Givens said that he had, but that he had not seen the footage from the officer's body camera. The trial court allowed Givens to view the video before the trial.

[6]     During the trial, Givens declined to give an opening statement, cross-examined the sole witness about how the syringes are typically used and whether Givens's intent to use them for drugs could be established, and made a closing argument that was based on legal research and case law. The trial court guided Givens when it was his turn to present evidence, stating that he could testify, call a witness, or present other evidence.

[7]     After finding Givens guilty as charged, the trial court offered the parties "a couple of weeks to get ready for sentencing." *Id.* at 49. Givens said that "Actually, I would prefer to proceed with sentencing today if that's at all possible." *Id.* The trial court then proceeded with sentencing, during which the trial court confirmed the accuracy of the presentence investigation report and Givens confirmed his credit time. The State asked for a sentence of two and one-half years with no time suspended based on Givens's criminal history. Givens agreed that "I think it's in the best interest of justice to do the two-and-a-half years, none of it suspended, no probation." *Id.* at 52. The trial court imposed a sentence of two and one-half years with no time suspended. Givens now appeals.

# Discussion and Decision

[8]     Givens's sole argument on appeal is that the trial court erred by permitting him to proceed pro se because his waiver of his right to counsel was not knowing, voluntary, and intelligent.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel. *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003). Implicit in the right to counsel is the right to self-representation. *Drake v. State*, 895 N.E.2d 389, 392 (Ind. Ct. App. 2008). However, before a defendant waives his right to counsel and proceeds pro se, the trial court must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent. *Jones*, 783 N.E.2d at 1138. We review de novo a trial court's finding that a defendant waived his right to counsel. *Miller v. State*, 789 N.E.2d 32, 37 (Ind. Ct. App. 2003).

Our Supreme Court has stated that there are no specific "talking points" a trial court must follow when advising a defendant of the dangers and disadvantages of proceeding without counsel. *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001). Instead, a trial court needs only to come to a "considered determination" that the defendant is making a knowing, voluntary, and intelligent waiver of his right to counsel. *Id.* Our Supreme Court has adopted four factors for an appellate court to consider when determining whether a knowing, voluntary, and intelligent waiver has occurred: (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. *Id.* at 1127-28. In making this analysis, we are mindful that the trial court is in the best position to assess whether the defendant has made a knowing, voluntary,

and intelligent waiver, and we will most likely affirm "where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion about the defendant's understanding of his rights and voluntariness of his decision." *Id.* at 1128 (internal quotation marks and citation omitted).

[11]   Givens does not address the sufficiency of the trial court's inquiry into his decision, but argues that each of the remaining three *Poynter* factors weigh in his favor.  Regarding whether Givens understood the dangers and disadvantages of self-representation, Givens contends that the trial court's advisement was inadequate because it was "relatively short" and focused on "procedural steps" with which a pro se defendant might be unfamiliar.  Appellant's Br. p. 16. Specifically, the trial court advised that

> There are perils and risks to self-representation, and I'm assuming that you don't have any legal education.  And if you're going to represent yourself that means that I'm going to be looking to you to present evidence, which you think is appropriate.  You're going to need to know how to present that evidence.  If the State wants to produce evidence, which you find objectionable, you're going to need to know how to formulate objections in a legal sense, and you're going to have to question witnesses, give opening statements, and so forth.  Do you understand that?

Tr. p. 25.  In short, the trial court ensured that Givens knew that, by proceeding pro se, he would have to present evidence, object to evidence, and question witnesses on his own.  Givens assured the trial court that he understood these

expectations. Givens contends that the trial court should have also explained the importance of counsel. But a trial court does not have to follow specific talking points when advising a defendant of the risks of proceeding pro se. *Poynter*, 749 N.E.2d at 1126. Moreover, Givens appears to have been aware of the advantages of having counsel, considering that he had previously requested a public defender and had been represented for several months before his trial. The trial court did not err through its advisement of the dangers and disadvantages of proceeding pro se.

[12] With respect to the next *Poynter* factor regarding Givens's background and experience, Givens contends that the trial court made no specific inquiry but simply assumed that Givens had no legal education. At Givens's initial hearing, however, Givens told the trial court that he could read, write, and understand English, and that he completed school through the eleventh grade. Further, Givens has a substantial criminal history, including two felony convictions and six misdemeanor convictions, and, as of April 2017, had several pending felony and misdemeanor charges in addition to the one in the instant case. In other words, Givens has had extensive contact with the criminal justice system, giving him enough experience to know to request discovery from the State, to file motions with the trial court, to cross-examine a witness, to conduct legal research, and to formulate cogent legal argument. As the result of his request for discovery, the State provided him a copy of the police report, and the trial court allowed him time before his trial to view the officer's body camera recording. The evidence in the record regarding Givens's

background and experience do not support a conclusion that his decision to represent himself was unknowing, involuntary, or unintelligent.

[13] Regarding the final *Poynter* factor about the context of Givens's decision to proceed pro se, the record shows that the trial court did not ask Givens why he decided to dismiss his public defender and proceed pro se. It would be a better practice for the trial court to do so, and we encourage trial courts to make thorough inquiries of defendants who want to represent themselves in the future. Given the totality of the circumstances in this case, however, we do not find that the trial court erred by not asking additional questions to determine why Givens wanted to proceed pro se. The trial court was more than accommodating of Givens's decision to represent himself, delaying the start of the trial so that Givens could view the officer's body camera recording and, during the trial, explaining to Givens what his next steps should be.

[14] In sum, Givens had representation, pleaded guilty, and moved to withdraw his guilty plea all before he decided to proceed pro se during a bench trial. Because he had had representation during this case and has had extensive experience with the criminal justice system, Givens was aware of the advantages of having counsel. Further, while representing himself, Givens was able to request discovery, file motions, cross-examine a witness, and present legal research and case law in support of his defense. Under these facts and circumstances, we conclude that Givens's decision to proceed pro se was knowingly, voluntarily, and intelligently made.

[15]     Finally, Givens contends that the trial court erred by failing to readvise him of his right to counsel before his sentencing hearing. Givens directs us back to the trial court's advisement about the risks of self-representation, during which the trial court made no mention of the advantages of having counsel at sentencing. At the start of the bench trial, the trial court confirmed that Givens still wanted to proceed pro se. Following the bench trial, the trial court offered the parties significant time to prepare for sentencing. Givens requested that they proceed with sentencing that same day—in other words, his knowing, voluntary, and intelligent waiver of his right to counsel continued uninterrupted through the end of the proceedings.[2] Therefore, the trial court did not err by not inquiring again about Givens's waiver of his right to counsel.

[16]     The judgment of the trial court is affirmed.

Barnes, J., and Bradford, J., concur.

---

[2] We also note that Givens wholly agreed with the sentence proposed by the State and imposed by the trial court.