Adam DRAKE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 77A04–0803–CR–158.

Court of Appeals of Indiana.

Oct. 28, 2008.

John Pinnow, Special Assistant to the State, Public Defender, Greenwood, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Adam Drake appeals his conviction and sentence for Battery,[1] a class D felony. Specifically, Drake argues that his Sixth Amendment[2] right to counsel was violated because he did not knowingly and intelligently waive that right when the trial court granted his request to proceed pro se. Concluding that Drake did not make a knowing and intelligent waiver of his right to counsel, we reverse and remand for new trial.

### FACTS[3]

On December 19, 2007, Kristen Copeland, Drake's ex-fiancé, tried to retrieve some of her belongings from Drake's residence. Drake told her to get the assistance of State Troopers Fitzgerald and Hilton. Neither Trooper Fitzgerald nor Trooper Hilton was on duty, but Deputy Joshua Cary agreed to assist Copeland, and the deputy secured assistance from Trooper Joseph Robinson.

After arriving at Drake's residence, Deputy Cary began to load Copeland's belongings into her truck. During this time, Drake asked Trooper Robinson about his involvement in an incident that had occurred several nights earlier at the residence of Drake's father. Trooper Robinson responded that he knew nothing about the incident. Right after Deputy Cary placed the last of Copeland's belongings

---

1. Indiana Code § 35–42–2–1.

2. U.S. Const. Amend. VI.

3. We heard oral argument on September 30, 2008, at Vincennes University. We would like to thank the school's administration, faculty, and students for their hospitality.

into her truck, Drake mumbled something to the effect of "this is for your friends from the other night" or "this is for the other two." Tr. p. 150, 163. Drake then lunged at Trooper Robinson, using his right arm and elbow to strike Trooper Robinson in the lower lip and knocking him down. Deputy Cary tackled Drake, and the officers handcuffed him.

Drake was charged with battery, a class D felony, and resisting law enforcement, a class A misdemeanor. At the initial hearing on December 21, 2007, the trial court advised Drake that he had the right to appointed counsel. Drake informed the court that he wanted to represent himself, and the following colloquy ensued:

> THE COURT: You also have the right to an Attorney. If you can't afford an Attorney now or at any later time, the Court will appoint one for you including trial and appeal to be paid for by the tax payers of Sullivan County. Do you understand your rights to an Attorney?
>
> ADAM DRAKE: Yes.
>
> THE COURT: Do you wish to talk to an Attorney in this matter?
>
> ADAM DRAKE: No.
>
> THE COURT: By saying no you are giving up the right to have an Attorney represent you. Do you understand that?
>
> ADAM DRAKE: Yes.
>
> THE COURT: The Could [sic] will enter a plea of not guilty for you to both of these charges and set this matter for trial unless you request at any time to change your plea to guilty. If you plead guilty, you give up all the rights that I explained to you including the right to have an Attorney to represent you and to have a trial in this matter. Do you understand that?
>
> ADAM DRAKE: Yes.
>
> THE COURT: Do you wish for your not guilty plea to stand as I have entered it for you to these two charges or do you wish to change your plea to guilty?
>
> ADAM DRAKE: No.
>
> THE COURT: What do you want to do?
>
> ADAM DRAKE: A quick and speedy trial.
>
> THE COURT: Okay and you are going to proceed without an Attorney at this quick and speedy trial?
>
> ADAM DRAKE: Yes.
>
> THE COURT: And have you ever tried a case before?
>
> ADAM DRAKE: No.
>
> THE COURT: So why I am asking this question is there are several procedural matters when you are trying a case that you won't know what to do. You won't know how many exemptions to have for example.
>
> ADAM DRAKE: Right I understand that Your Honor, but I also from past experience understand that the Attorneys work with the Prosecutor so therefore wouldn't help me at all.
>
> THE COURT: But the problem being whether that is true or not, the problem being is that you don't have the expertise to select a jury for example.

*Id.* at 6–7.

The trial court appointed standby counsel to assist Drake. Standby counsel withdrew a few weeks later, and Michael Slagle was appointed as Drake's new standby counsel. Under the mistaken impression that he was Drake's appointed attorney and counsel of record, Slagle filed a motion to evaluate Drake's competency to stand trial. This motion was granted; however, Drake requested that the motion be withdrawn and renewed his request for a speedy trial. Slagle expressed his concern about Drake's mental competency, but the

trial court granted Drake's request to have the motion withdrawn.

At the final pretrial conference on February 22, 2008, the trial court advised Drake that some of his subpoena requests were untimely and would not be served. The trial court also informed Drake that he could file a motion for continuance, but he refused.

Drake's trial began on February 26, 2008. At that time, Drake moved to dismiss the case, alleging that he was being forced to choose between a speedy trial and his constitutional right to have witnesses subpoenaed on his behalf. During the discussion regarding his motion, Drake reaffirmed his desire to proceed pro se despite the trial court's warning that he could not simultaneously represent himself and insist that he had no idea what was going on. *Id.* at 66–67. The trial court denied Drake's motion to dismiss.

During voir dire, Slagle questioned the prospective jurors. Drake delivered his opening statement and made numerous objections during the State's case-in-chief. In addition, Drake called eleven witnesses and delivered his closing argument. The jury found Drake guilty of class D felony battery and not guilty of resisting law enforcement. Drake was fined $100 plus costs and sentenced to three years imprisonment. Drake now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Drake argues that his conviction must be set aside because his decision to waive his right to counsel was not knowing and intelligent. A criminal defendant's Sixth Amendment right to counsel is essential to the fairness of a criminal proceeding. *Gideon v. Wainwright,* 372 U.S. 335, 344–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Implicit in the right to counsel is the right to self-representation. *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Because a criminal defendant gives up many benefits when the right to counsel is waived, "the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Furthermore, when a defendant asserts his or her right to self-representation, the trial court should advise the defendant of the "dangers and disadvantages of self-representation." *Id.*

■ Our Supreme Court has stated that there are no specific "talking points" when advising a defendant of the dangers and disadvantages of proceeding without counsel, and that a trial court needs only to come to a "considered determination" that the defendant is making a knowing, voluntary, and intelligent waiver of his or her right to counsel. *Poynter v. State,* 749 N.E.2d 1122, 1126 (Ind.2001). Furthermore, when making its determination, the trial court should be mindful that "the law indulges every reasonable presumption against a waiver of this fundamental right." *Id.*

■ Our Supreme Court has adopted four factors to consider when determining whether a knowing and intelligent waiver occurred:

"(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed *pro se.*"

*Id.* at 1127–28 (quoting *United States v. Hoskins,* 243 F.3d 407, 410 (7th Cir.2001)).

The trial court is in the best position to assess whether the defendant has made a knowing and intelligent waiver, and the trial court's finding will most likely be upheld "where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion." *Id.* at 1128 (citations omitted). Nevertheless, the trial court's conclusion whether the defendant knowingly and voluntarily waived the right to counsel is reviewed de novo. *Miller v. State,* 789 N.E.2d 32, 37 (Ind.Ct.App.2003) (citing *Balfour v. State,* 779 N.E.2d 1211, 1216 (Ind.Ct.App.2002)).

## II. *Poynter Factors One and Two*

■ The first two factors set forth in *Poynter* focus on whether the defendant had sufficient information about the dangers and disadvantages of self-representation, one through the trial court's inquiry, and the other through any other evidence in the record. Drake argues that the trial court's inquiry was insufficient. Specifically, Drake asserts that he should have been advised of the advantages that counsel could provide him. In addition, Drake argues that he should have been told that he would have to follow the same rules as an attorney.

In *Miller,* this court held that the defendant had not made a knowing and intelligent waiver of his right to counsel. *Id.* at 38. In addressing the first *Poynter* factor, this court reasoned that the trial court's inquiry, which focused on the defendant's right to court-appointed counsel and whether the defendant thought he needed counsel was insufficient for the trial court to make a "reasoned inquiry" into the defendant's decision to waive this important right. *Id.* at 37–38.

In analyzing the second *Poynter* factor, the *Miller* court acknowledged that the trial court warned the defendant that he may incriminate himself by the types of questions that he may ask, but noted that the defendant was not advised of any other dangers or disadvantages of proceeding without counsel. *Id.* at 38. Thus, this court concluded that there was no other evidence in record to show that the defendant understood the dangers and disadvantages of proceeding without counsel. *Id.*

Conversely, in *Ellerman v. State,* this court held that the defendant had made a knowing and intelligent waiver of his right to counsel. 786 N.E.2d 788, 794 (Ind.Ct. App.2003). The *Ellerman* court reasoned that the trial court warned the defendant that the attorneys for the State were highly trained and knew the rules of evidence. *Id.* Moreover, the record demonstrated that the prosecutor had warned the defendant that he would not be given any special treatment simply because he was representing himself. *Id.* In addition, the prosecutor praised the abilities of the defendant's standby counsel, and stated that the defendant's request to represent himself was "one of the stupidest things [he had] ever encountered." *Id.*

Here, during Drake's initial hearing on December 21, 2007, the trial court did warn Drake that "there are several procedural matters when you are trying a case that you won't know what to do .... you don't have the expertise to select a jury for example." Tr. p. 7. In addition, on February 26, 2008, the day Drake's trial commenced, the trial court warned Drake that he could not simultaneously represent himself and claim that he has no idea what is going on during the proceedings. *Id.* at 66. Drake, however, was not advised of any other disadvantages of proceeding without counsel or any of the advantages that counsel could provide. Indeed, the State conceded during oral argument that the trial court's inquiry into Drake's deci-

sion to proceed without counsel was limited. Thus, this case is similar to *Miller*, in which this court determined that the defendant had not made a knowing and intelligent waiver of his right to counsel because he had not been adequately advised about the dangers and disadvantages of proceeding without counsel. *Miller*, 789 N.E.2d at 37–38. In addition, unlike *Ellerman* where the trial court along with the prosecutor had sufficiently advised the defendant of the dangers and disadvantages of proceeding without counsel, 786 N.E.2d at 794, the record here does not show that Drake was adequately advised of such hazards by the trial court or anyone else.

This court has held that only under exceptional circumstances will a knowing and intelligent waiver be found when the trial court has failed to adequately advise the defendant of dangers and disadvantages of proceeding without counsel. *Miller v. State*, 795 N.E.2d 468, 468 (Ind.Ct. App.2003). An example of such exceptional circumstances can be found in *Henson v. State*, in which this court held that the defendant made a knowing and intelligent waiver of his right to counsel even though the trial court had not adequately advised him of the dangers and disadvantages of proceeding without counsel. 798 N.E.2d 540, 548 (Ind.Ct.App.2003). The *Henson* court reasoned that exceptional circumstances existed because the defendant's attorney assured the court that the defendant could adequately conduct his own defense and that the attorney would continue to assist the defendant as standby counsel. *Id.*

This case, however, is unlike *Henson* because there is no other evidence in the record indicating that Drake understood the dangers and disadvantages of proceeding without counsel. To the contrary, the record shows that Drake's only prior contacts with the criminal justice system were three guilty pleas to misdemeanors. Tr. p. 240. Furthermore, Drake informed the court that he had never tried a case, and his standby counsel expressed concerns about his competency to stand trial. Therefore, because Drake was not adequately advised about or aware of the dangers and disadvantages of proceeding without counsel, *Poynter* factors one and two weigh in favor of finding that Drake did not make a knowing, intelligent, and voluntary waiver of his right to counsel.

### III. Poynter Factor Three

The third *Poynter* factor concerns whether the defendant has the background and experience necessary to make a voluntary, knowing, and intelligent waiver of his right to counsel. Drake argues that his background and experience were insufficient, pointing out that he was only twenty-seven years old, unemployed, and knew only that there was a law library at the jail in 2002. Furthermore, Drake's criminal history consists only of a guilty plea to battery in 2003 and driving while suspended in 2006 and 2007. Moreover, Drake maintains that his competency was in question at the time the trial court granted his request to represent himself; consequently, he did not have the ability to make a knowing and intelligent waiver of his right to counsel.

The State acknowledges that there was no specific inquiry into Drake's background, education, or abilities; however, it points out that the trial court did ask Drake whether he had ever tried a case. *Id.* at 7. The State further maintains that there was no specific evidence suggesting that Drake was incompetent and argues that Drake's argument rests on standby counsel's filing of a motion to determine competency to stand trial and that this motion was merely cautionary.

In *Martin v. State*, the defendant did not want to testify "because of the involve-

ment of 'the Pentagon', 'organized crime' and 'psychic' forces." 588 N.E.2d 1291, 1294 (Ind.Ct.App.1992). In addition, Martin believed that neither he nor his witnesses had been able to communicate with his attorney because the telephone lines had been blocked by the attorney's computer. *Id.* In light of these circumstances, we determined that because Martin had previously been found incompetent and received Social Security benefits for his mental condition, the trial court was obligated to determine Martin's competency before allowing him to make decisions about his defense such as deciding to waive his right to counsel. *Id.* at 1293–94.

Here, there was no specific inquiry into Drake's background, education, or abilities. Furthermore, Drake's competency was put into question when standby counsel filed a motion for a competency evaluation, which was initially granted. Although the motion did not state a specific basis for the request, there were reasonable grounds supporting the motion. Specifically, Drake's father stated that he believed that Drake had manic depression and was a "conspiracist in his thought process." Tr. p. 219, 221. In addition, like the defendant in *Martin,* who thought there was a conspiracy against him, several of Drake's witnesses testified that he had told them that his life was in danger and that there was a potential conspiracy to murder him.

*Martin,* however, can be distinguished because Drake was never found incompetent by the trial court. In addition, unlike the defendant in *Martin,* there is no evidence that Drake received Social Security benefits because of mental illness. Indeed, Drake acknowledges these important differences, but points out that unlike the defendant in *Martin,* he had not been evaluated by medical professionals, and there-

fore, could not have been found incompetent by the trial court.

In our view, the trial court should have conducted a more extensive inquiry into Drake's background, education, and abilities, including his mental state. We do not hold that a competency evaluation should be performed every time a defendant asserts his or her right to proceed without counsel. However, in this case, the sparse record regarding Drake's background, education, and abilities, coupled with Drake's uncertain mental state, leads us to weigh this factor in favor of not finding a voluntary, knowing, and intelligent waiver of the right to counsel.

### IV. Poynter Factor Four

■ Finally, the fourth *Poynter* factor examines the context of the defendant's decision to proceed pro se. If a defendant's decision to proceed without counsel appears tactical, then this factor weighs in favor of finding a knowing and intelligent waiver. *Poynter,* 749 N.E.2d at 1128 n. 6. As discussed above, Drake maintains that he wanted to represent himself because he believed that defense attorneys worked with the prosecutors and would be of no help to him. In addition, Drake wanted to know everything and was concerned that this would not happen if he had an attorney. Thus, Drake admits that his decision to represent himself was tactical in nature, but maintains that this factor is not necessarily dispositive.

In *Miller,* this court determined that a knowing and intelligent waiver had not occurred despite the fact that the defendant's decision to represent himself was a tactical one. 789 N.E.2d at 38. This court reasoned that the defendant had not been advised of all the dangers and disadvantages of self-representation; therefore, he could not make a knowing and intelligent waiver even if the decision appeared to be tactical. *Id.* Although this factor weighs

in favor of finding a knowing and intelligent waiver, it is not necessarily dispositive because the record shows that the trial court did not advise Drake of all the dangers and disadvantages of proceeding pro se.

### V. Balancing the Poynter Factors

■ When considering the totality of the circumstances, it is apparent to us that the trial court failed to adequately advise Drake of the dangers and disadvantages of proceeding without counsel. Furthermore, the sparse record, coupled with Drake's questionable mental capacity, leads to the conclusion that the trial court should have inquired further into Drake's background, education, and abilities. Finally, although Drake's decision appears to be tactical in nature, this factor is not dispositive because he was not adequately advised of all of the pitfalls of proceeding without counsel. Thus, we conclude that Drake did not make a voluntary, knowing, and intelligent waiver of his right to counsel.

■ As an aside, we recognize that Drake was able to present a coherent defense by delivering his opening statement, making numerous objections, questioning witnesses, and delivering his closing argument. However, whether a defendant voluntarily, knowingly, and intelligently waived counsel is not subject to a harmless error analysis. See Osborne v. State, 754 N.E.2d 916, 921 (Ind.2001) (acknowledging that a denial of a defendant's right to self-representation is not subject to the harmless error analysis). We cannot use hindsight to determine whether or not a knowing and intelligent waiver of this fundamental right had occurred. Instead, we must look at the facts and circumstances at the time the waiver was made. Here, when Drake purportedly waived his right to counsel, he was not adequately advised of the dangers and disadvantages of self-representation, and the record is vague as

to his background, abilities, and education. Therefore, even though he was able to present a cogent defense, Drake's failure to give a voluntary, knowing, and intelligent waiver of his right to counsel compels us to reverse and remand for a new trial.

Finally, we are mindful of the difficulty that our trial courts face in balancing the Sixth Amendment right to counsel with its seemingly incompatible right to self-representation. See Faretta, 422 U.S. at 833, 95 S.Ct. 2525 (recognizing the tension between the right to counsel and the right to self-representation). In Dowell v. State, this court set out guidelines for trial courts to follow in determining whether a defendant made a knowing and intelligent waiver of the right to counsel. 557 N.E.2d 1063, 1066–67 (Ind.Ct.App.1990). Our Supreme Court later approved of these guidelines, but held that they do not constitute rigid mandates that trial courts must follow. Leonard, 579 N.E.2d at 1296. Although not rigid requirements, the Dowell guidelines might very well assist trial courts in making the determination of whether or not a defendant has waived his or her right to counsel.

To reiterate the Dowell guidelines, first, the defendant should be advised of the nature of the charges against him, including any lesser included offenses, and the possibility of defenses and mitigating circumstances surrounding the charges. 557 N.E.2d at 1066. The defendant should be advised that self-representation is almost always unwise. Id. at 1066–67. In addition, the defendant should be advised that he or she will be held to the same standards as an attorney and that the State will be represented by experienced, professional legal counsel. Id. at 1067.

Furthermore, the defendant should be made aware of the advantages that legal counsel can provide such as:

(1) investigating and interrogating witnesses; (2) gathering appropriate documentary evidence; (3) obtaining favorable defense witnesses; (4) preparing and filing pretrial motions; (5) preparing appropriate written instructions for the jury; (6) presenting favorable opening and closing arguments; (7) examining and cross-examining witnesses at trial; and (8) recognizing objectionable, prejudicial evidence and testimony and making proper objections thereto.

*Id.*

Likewise, the trial court should examine the defendant's educational background and whether or not the defendant has any familiarity with legal procedures and rules of evidence. *Id.* In addition, the trial court should inquire into the defendant's mental capacity if there is any question about the defendant's mental state. *Id.* Finally, the defendant should be made aware that if he or she chooses to proceed without counsel, there can be no later claim of inadequate representation. *Id.*

▪ Again, we stress that whether or not a defendant made a knowing and intelligent waiver of the right to counsel depends upon the totality of the circumstances in each individual case, and there are no specific guidelines or "talking points" that a trial court must follow. *Poynter,* 749 N.E.2d at 1126. Rather, the trial court must determine whether a voluntary, knowing, and intelligent waiver exists by making certain that the defendant is aware of the dangers and disadvantages of proceeding without counsel and ensuring that the record reflects that the defendant made the decision with his or her "eyes open." *Osborne,* 754 N.E.2d at 920–21. The guidelines discussed above are only meant to be a resource to trial courts in making this sometimes difficult determination.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

MAY, J., and BROWN, J., concur.