**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 03 2014, 7:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County
Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ANTHONY JOHNSON,  )
 )
 Appellant-Defendant,  )
 )
 vs.  )  No. 49A04-1312-CR-612
 )
STATE OF INDIANA,  )
 )
 Appellee-Plaintiff.  )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy M. Jones, Judge
Cause No. 49F08-1309-CM-60680

**September 3, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Anthony Johnson appeals his conviction for Resisting Law Enforcement,[1] a Class A misdemeanor. Johnson, who appeared pro se at trial, argues that the trial court failed to adequately explain the consequences of self-representation and contends that his waiver of his right to counsel was not knowing, intelligent, and voluntary. He also maintains that the trial court's restrictions on his movements during trial prejudiced the jury and interfered with his right to present a defense. In addition, Johnson argues that the trial court's instruction to the jury that "statements made by attorneys are not evidence" was fundamental error because he was a pro se defendant acting as an attorney and testifying on his own behalf. Finally, Johnson asserts that the trial court erred by depriving him of his right to allocution during sentencing. Finding that 1) Johnson's waiver of his right to represent himself was knowing, voluntary, and intelligent; 2) the trial court's restriction of Johnson's movement was not fundamental error; 3) the trial court's jury instructions were not improper; and 4) the trial court did not deny Johnson his due process rights at sentencing, we affirm the judgment of the trial court.

FACTS

On September 12, 2013, Speedway Police Department Detective Chris Ristuccia responded to a narcotics complaint at a hotel in Speedway. When he arrived at the hotel, Detective Ristuccia drove around the hotel a few times, parked, walked around the motel, and then drove back to the north side of the hotel and parked. At this point, the detective saw Johnson, who was dressed in a gray shirt and denim shorts. Johnson exited a hotel

---

[1] Ind. Code § 35-44.1-3-1(a)

2

room, walked through a breezeway, and walked toward a red van. The van driver exited the van; he was wearing a white shirt and denim shorts. Johnson and the driver approached each other.

Detective Ristuccia observed that the driver appeared to be counting money, which he then handed to Johnson. Johnson then removed something from his pocket and handed it to the driver. Believing that he had just witnessed a narcotics transaction, Detective Ristuccia drove up to the men in his police vehicle with his lights flashing. The driver was facing the detective, and Johnson had his back to the detective. The detective was wearing a police vest with his police badge on the left side of his chest and the word "police" on the right side of his chest.

When Detective Ristuccia exited the police vehicle, the driver raised his hands, and Johnson turned to face him. The Detective saw that Johnson had a semi-automatic pistol grip protruding from the front of his shorts. At that point, Detective Ristuccia ordered both men to lie on the ground. Johnson began to run, and the Detective yelled "stop police." Tr. p. 59. Johnson did not stop; instead, he climbed and jumped a six-foot fence and ran to hide in deep vegetation. Detective Ristuccia called for officers to assist him, and the officers established a perimeter for a search.

One of the responding officers, Indianapolis Metropolitan Police Department Officer Adam Novak, began to track defendant with his K9 Officer, Viky. Before entering the wooded area, Novak yelled out, both in English and Spanish, that he was a police officer and told Johnson to surrender or he might be bitten. Officer Novak tracked

3

Johnson with Viky, and Viky alerted, indicating that he had detected Johnson. Once again, Novak warned Johnson that he should surrender. Johnson did not, and Viky located him and bit him. Once Officer Novak was satisfied that Johnson did not have a weapon, he ordered Viky to back away from Johnson. Officer Novak then arrested Johnson.

On September 13, 2013, the State charged Johnson with Count I, striking a law enforcement animal as a class A misdemeanor, and Count II, resisting Law Enforcement as a class A misdemeanor. The trial court appointed the Marion County Public Defender's Office to represent Johnson. On September 28, 2013, Johnson requested a speedy trial. On October 11, 2013, Johnson filed a motion for a jury trial, which the trial court granted.

On November 18, 2013, Johnson moved to proceed pro se. The trial court informed Johnson that 1) he would be held to the same standards as an attorney; 2) he would have to understand and abide by the Indiana Rules of Evidence and the Indiana Rules of Procedure; 3) to present an effective defense it would be necessary for Johnson to be familiar with those rules; 4) he would have to understand the proper questions to ask witnesses and those questions would have to conform to the rules; and 5) introducing inadmissible evidence could result in a mistrial. It further advised him that he would be best served by accepting the representation of counsel. The trial court stated, "I don't believe as though you have the experience that you would be able to represent yourself in this court." Tr. p. 6.

4

The trial court told Johnson to discuss the issue with his public defenders, who told the trial court that they had advised him that it was not in his best interest to represent himself. The public defenders informed Johnson that, without their representation, he would need to choose the jury, make an opening statement, and talk with the witnesses. However, Johnson still decided to proceed pro se. The trial court appointed his public defenders as standby counsel and advised Johnson that standby counsel was present only to advise him regarding procedural matters.

The trial court did not order Johnson to be handcuffed or shackled in the presence of the jury. However, the trial court did order Johnson to remain at his table unless the trial court conducted a bench conference. During jury selection and the trial, the trial court allowed Johnson to approach the bench at least ten times for bench conferences. Before the trial began, Johnson indicated that he did not have any objections to the preliminary instructions.

Johnson's jury trial took place on November 18, 2013. He chose to testify in his own defense and was sworn in as a witness. When Johnson took the stand, he asked himself a question as his own attorney and then provided a response. The court had informed Johnson that he should ask himself questions and then provide a response.

Johnson testified that the first time he saw Detective Ristuccia was in the courtroom and that he was at the hotel to sell a video camera. Johnson testified that he had never seen a man in a red vehicle while at the hotel. He admitted that he did know

5

that there was a warrant out for his arrest in Kansas before he was arrested in Indiana on September 12, 2013.

During cross-examination, Johnson admitted that he provided a false name to the police. However, he denied running from the police; he testified that he was just sitting beside a fence and did not know that the police were searching for him until he was bitten by the police dog.

When final instructions were given, Johnson did not object. Final instruction 22 provided: "statements made by attorneys are not evidence." Id. at 73. Final instruction 23 provided: "You should judge the testimony of the defendant as you would the testimony of any other witness." Id. at 74.

The jury found Johnson guilty of Count II, resisting law enforcement as a class A misdemeanor, but it found him not guilty of Count I, striking a law enforcement animal as a class A misdemeanor. On November 19, 2013, the trial court held Johnson's sentencing hearing; it sentenced him to 300 days executed in the Marion County Jail. Johnson now appeals.

## DISCUSSION AND DECISION

### I. Waiver of the Right to Counsel

Johnson argues that his conviction must be set aside because his decision to waive his right to counsel was not knowing, intelligent, and voluntary. He contends that the trial court failed to warn him of the dangers and disadvantages of self-representation.

6

A trial court's finding that a defendant waived his right to counsel is reviewed de novo. Miller v. State, 789 N.E.2d 32, 37 (Ind. Ct. App. 2003). A criminal defendant's Sixth Amendment right to counsel is essential to the fairness of a criminal proceeding. Drake v. State, 895 N.E.2d 389, 392 (Ind. Ct. App. 2008). The right to self-representation is implicit in the right to counsel. Id. However, before a defendant waives his right to counsel and proceeds pro se, the trial court must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent. Jones v. State, 783 N.E.2d 1132, 1138 (Ind. 2003).

When a defendant asserts his or her right to proceed pro se, the trial court must "acquaint the defendant with the advantages to attorney representation and the disadvantages and the dangers of self-representation." Id. Our Supreme Court has adopted four factors for a trial court to consider when determining whether a knowing, voluntary, and intelligent waiver has occurred:

> (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence into the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se.

Id. at 1127–28.

However, while our Supreme Court has endorsed these guidelines, they do not "constitute a rigid mandate setting forth specific inquiries that a trial court is required to make before determining whether a defendant's waiver of right to counsel is knowing, intelligent, and mandatory." Leonard v. State, 579 N.E.2d 1294 (Ind. 1991). Therefore, our Supreme

Court has stated that there are no specific "talking points" a trial court must follow when advising a defendant of the dangers and disadvantages of proceeding without counsel. Poynter v. State, 749 N.E.2d 1122, 1126 (Ind. 2001). Instead, a trial court needs only to come to a "considered determination" that the defendant is making a knowing, voluntary, and intelligent waiver of his or her right to counsel. Id. In making this analysis, a trial court is in the best position to assess whether the defendant has made a knowing, voluntary, and intelligent waiver, and the trial court's finding will most likely be upheld "where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion." Poynter, 749 N.E.2d at 1128.

Here, the trial court questioned Johnson regarding his level of education, discovering that he had completed some college, but that he had never represented himself before. It also informed Johnson that he would be held to the same standards as an attorney. Tr. p. 5. The trial court asked Johnson if he was familiar with the Rules of Procedure and Evidence. Id. When he told the trial court he was not, it informed him that he would be required to follow those rules. It told Johnson that his lawyers would be able to mount a more effective defense on his behalf and warned him that it did not think he would be able to represent himself adequately. Id. at 6. Johnson was also informed that he would have to abide by the rules of court when questioning witnesses. The trial court informed him several times that it would not be in his best interest to continue pro se and that it wanted Johnson to "understand the kind of the deep end of the pool that

you're about to jump into here unrepresented, okay." Id. at p. 12. Johnson continued to insist that he wished to represent himself because he wished to control his own defense.

When Johnson stated that he still wished to proceed pro se, the trial court asked him to take some time to discuss the decision with his attorneys. Both public defenders advised Johnson that it would not be in his best interest to proceed pro se and told him "that if he does that he's got to do everything that we do[,] which would include choosing the jury, opening statements, . . . talking with the witnesses; all those things that we would not be able to just jump in if he changed his mind in the middle." Id. 15.

Under these circumstances, we find that Johnson was sufficiently informed of the advantages to attorney representation and the disadvantages and the dangers of self-representation. Therefore, Johnson's waiver was knowing, intelligent, and voluntary.

## II. Restriction of Johnson's Movements

Johnson next argues that the trial court inappropriately restricted his movements during trial. He contends that, in restricting his movements, the trial court destroyed the presumption of innocence by allowing the jury to infer that he was dangerous and in need of restraint. Further, Johnson maintains that the restrictions interfered with his right to present a defense.

At the outset, we note that Johnson did not object to the physical restrictions placed on him at trial. As a general rule, the failure to object at trial results in waiver of the issue on appeal. Benson v. State, 762 N.E.2d 748, 755 (Ind. 2002). We nevertheless sometimes entertain such claims under the rubric of "fundamental error." Clark v. State,

9

915 N.E.2d 126 (Ind. 2009). Fundamental error is "an error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." Id. Fundamental error applies only when the actual or potential harm cannot be denied. Id.

The general rule precludes the presentation to the jury of the defendant in bonds or shackles. Smith v. State, 475 N.E.2d 1139, 1144 (Ind. 1985). However, the trial court did not allow the jury to see Johnson in such restraints. Rather, the trial court ordered that Johnson was not to "walk around the courtroom" unless there was a bench conference. Tr. p. 30. The trial court allowed Johnson to approach the bench on at least ten occasions. Id. at 75-78, 86-88, 118-19, 138-39, 150-51, 178-79, 247, 249-50, 254-55, 256-57.

Moreover, it is within the trial court's discretion to implement security procedures when necessary to prevent the escape of the prisoner, to protect those in the courtroom or to maintain order. Smith, 475 N.E.2d at 1144. Johnson was charged with resisting law enforcement. Appellant's App. p. 17. Moreover, during the pre-trial conference, Johnson refused to answer questions directly, and the trial court concluded that "if he's going to continue to talk over the record and not allow us to have a hearing he can . . . we'll do this en [sic] absentia here." Tr. p. 212. It was within the trial court's discretion to ask Johnson not to wander about the courtroom if the trial court felt that the restriction was necessary to maintain order.

10

We find there is no showing in the record that the trial court abused its discretion, and, therefore, Johnson does not prevail on his claim of fundamental error.

### III. Jury Instructions

Johnson also argues that the trial court's instruction to the jury that "statements made by attorneys are not evidence" was fundamental error because he was a pro se defendant acting as an attorney and testifying on his own behalf. However, Johnson did not object at trial to the jury instructions. Thus, his claim is waived. Baker v. State, 948 N.E.2d 1169, 1178 (Ind. 2011).

In an effort to circumvent waiver, Johnson contends that the above instruction amounted to fundamental error. As noted above, to be considered "fundamental," the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and "thereby depriving the defendant of fundamental due process." Id. at 1178. In other words, the error must be so prejudicial to the defendant's rights as to make a fair trial impossible. Id.

In considering Johnson's claim of fundamental error with regard to the above instruction, we examine the allegedly erroneous instructions in the context of all of the relevant information given to the jury, including other instructions. Munford v. State, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010). Where a consideration of such information as a whole establishes that the instructions did not mislead the jury as to a correct understanding of the law, there is no due process violation and consequently no fundamental error. Dickenson v. State, 835 N.E.2d 542, 549 (Ind. Ct. App. 2005).

11

The jury was told that "statements made by attorneys are not evidence."

Appellant's App. 73. However, they were also instructed that:

> You are the exclusive judge of the evidence, which may either be witness testimony or exhibits. In considering the evidence, it is your duty to decide the value you give to the exhibits you receive and the testimony you hear.
>
> In determining the value to give to a witness's testimony, some factors you may consider are:
>
> - The witness's ability and opportunity to observe;
> - The witness's behavior while testifying;
> - Any interest, bias or prejudice the witness may have;
> - Any relationship with people involved in the case;
> - The reasonableness of the testimony considering the other evidence;
> - Your knowledge, common sense and life experiences.
>
> You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

Id. at 62. In addition, the jury was told:

> The trial of this case will proceed as follows:
>
> First, the attorneys will have an opportunity to make opening statements. These statements are not evidence and should be considered only as a preview of what attorneys expect the evidence will be.
>
> Following the opening statements, witnesses will be called to testify. They will be placed under oath and questioned by the attorneys. Exhibits may also be received as evidence. If an exhibit is given to you to examine, you should examine it carefully, individual, and without comments.
>
> When the evidence is completed, the attorneys may make final arguments. These final arguments are not evidence. The attorneys are permitted to

12

characterize the evidence, discuss the law and attempt to persuade you to a particular verdict. You may accept or reject those arguments as you see fit.

Id. at 68.

When looking to the instructions as a whole, it is clear that the jury was instructed that statements made by an attorney, or by Johnson during opening and closing argument, were not evidence. It is also clear that the jury was instructed that statements made by witnesses, including Johnson when he testified, were evidence. Further, when Johnson testified on his own behalf, he was sworn in and sat in the witness chair, which separated his testimony as a witness from his role in representing himself.

When looking at the instructions in this context, we find that the instructions did not mislead the jury as to a correct understanding of the law.

## IV. Sentencing

Finally, Johnson argues that the trial court erred when it denied him the right of allocution during sentencing.

Sentencing decisions are within the sound discretion of the trial court and are reviewed only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218. An abuse occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences drawn therefrom. Id. A trial court may abuse its discretion in sentencing by failing to enter a sentencing statement, entering a sentencing statement that explains reasons for imposing a sentence which the record does not support, omitting

13

reasons that are clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. Id. at 490-91.

"Commonly known as the 'right of allocution,' the opportunity at sentencing for criminal defendants to offer statements in their own behalf before the trial judge pronounces sentence is rooted in the common law." Biddinger v. State, 868 N.E.2d 407, 410 (Ind. 2007). "The right of allocution is minimally invasive of the sentencing proceeding; the requirement of providing the defendant a few moments of court time is slight." United States v. Barnes, 948 F.2d 325, 331 (7th Cir. 1991). Notwithstanding this minimal invasiveness, a defendant claiming that he was denied his right to allocution carries a strong burden in establishing his claim. Vicory v. State, 802 N.E.2d 426, 427 (Ind. 2004). When the defendant is given the opportunity to explain his view of the facts and circumstances, the purpose of the right of allocution has been accomplished. Id.

Here, while the trial court stated that it would allow Johnson a chance to speak on his behalf at the sentencing hearing, it never asked Johnson directly if he would like to say something on his own behalf. Tr. p. 197. This was largely due to Johnson's constant interruptions of the prosecutor and the trial court. However, the trial court did engage in questioning Johnson concerning the arguments made by the prosecutor during the sentencing hearing. Johnson was able to speak at length regarding past convictions and mitigating circumstances. Tr. p. 199-200, 294-06. He argued that he had not committed crimes the prosecutor had identified. Tr. p. 200, 205. He told the trial court that he had lived a hard life, and that his mother had given birth to him at fourteen years old. Id. at

14

204. He told the trial court that he was a certified HVAC technician; he told the trial court that he had children he cared for. Id. at 206. He stated that it was not his fault that he had wandered around the country or that things had not worked out for him. Id. Further, his testimony during the trial also allowed him to give the trial court his version of the facts and circumstances.

Therefore, because the purpose of allocution was fulfilled and because Johnson has not identified any statement or argument he would have made if the trial court had permitted him to continue speaking, any refusal on the trial court's part did not affect his substantial rights such that a reversal is warranted. Ind. Trial Rule 61; see Vicory, 802 N.E.2d at 427 (finding that, while the right to allocution applied to probation revocation hearings, the trial court's refusal to allow Vicory to read a statement at his revocation hearing did not affect his substantial rights when Vicory testified at his hearing and he did not identify any statement or argument he would have made if the court permitted him to read his statement).

Johnson further argues that the trial court based its sentence on information outside of the record. At the sentencing hearing, the trial court commented on Johnson's transient nature, and stated that "You just float around here, there, everywhere . . . living out of a truck with you know . . . I'm sure with stolen stuff I'm sure in the back of that trunk. . . It's a constant scheme." Tr. p. 201. While Johnson is correct that there was no evidence in the record to show that he was indeed carrying stolen contraband in a trunk, the trial court did not actually consider whether or not Johnson had stolen objects in the

15

back of his trunk when it sentenced him. While the comment may not have been entirely wise or appropriate, the trial court was observing a pattern in Johnson's behavior of finding trouble with the law and then moving to a new destination. When the trial court sentenced him, it focused on his criminal history and the crimes of dishonesty he had admitted to during the trial. Tr. p. 202. Therefore, we find that any error was harmless. Ind. Tr. R. 61. Further, even if the trial court abuses its discretion in sentencing, we will not remand for resentencing if the sentence imposed is not inappropriate. Mendoza v. State, 869 N.E.2d 546. The sentence imposed in this case was not inappropriate.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.