## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 19 2018, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Michael Riggle,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

June 19, 2018

Court of Appeals Case No.
49A05-1710-CR-2425

Appeal from the Marion Superior Court

The Honorable Sheila A. Carlisle, Judge

Trial Court Cause No.
49G03-1605-F1-20345

**Brown, Judge.**

[1] Michael Riggle appeals his convictions for multiple offenses including child molesting, sexual misconduct with a minor, child seduction, and activity related to an obscene performance. Riggle raises one issue which we revise and restate as whether he made a knowing, voluntary, and intelligent waiver of his right to counsel. We affirm.

## Facts and Procedural History

[2] On May 27, 2016, the State charged Riggle with: Count I, child molesting as a class A felony; Count II, child molesting as a class A felony; Count III, sexual misconduct with a minor as a class B felony; Count IV, child molesting as a class C felony; Count V, child seduction as a level 5 felony; Count VI, child seduction as a level 5 felony; Count VII, child seduction as a level 5 felony; Count VIII, child molesting as a level 1 felony; and Count IX, activity related to obscene performance.

[3] At the beginning of the trial, on August 28, 2017, Riggle fired his attorney and requested to move forward *pro se*. Specifically, the following exchange occurred:

> [Riggle]: You're fired. I – I'll be going *pro se*.
>
> THE COURT: Well, sir, you're represented by counsel this morning. We've - -
>
> [Riggle]: Yeah, I just fired him.
>
> THE COURT: Okay. Don't – don't interrupt me. Okay?
>
> [Riggle]: F--- it. Do what you're going to do. Let's go, man. We're trying to get – this s--- on the road.

Transcript Volume 2 at 15.

[4] The trial court informed Riggle that he had not been given permission by the court to proceed *pro se*. Riggle expressed concern about how his attorney had not come to visit him, stated he was not aware of what his attorney had done to prepare, and indicated that he was "more comfortable doing it on [his] own." *Id.* at 17. The court then questioned him and his attorney, Kevin McShane, about Riggle's decision to proceed *pro se*. When questioned, Attorney McShane stated Riggle had an absolute right to represent himself and that he had no reason to believe Riggle was not competent. The court took a recess to allow Riggle and his attorney to discuss the situation. After the recess, Attorney McShane stated he thought Riggle's desire to proceed *pro se* was sincere and asked the court for permission to withdraw as counsel.

[5] The court placed Riggle under oath and began questioning him about his decision to proceed *pro se*. The court questioned Riggle regarding his education, and he testified that he received a GED with honors, completed one year of college, and completed trade school for plumbing.

[6] The court asked Riggle if he was currently under the influence of any alcohol or prescription medication, and he answered "no." The following exchange took place:

> THE COURT: . . . Have you ever been treated for any mental illness of any kind?
>
> [Riggle]: Manic depression and bipolar disorder.

THE COURT: And how long ago was that?

[Riggle]: That I was treated?

THE COURT: Yes.

[Riggle]: It's been years. I don't -- over a decade.

THE COURT: [A]ny treatment for any mental health issues since you've been charged with this case?

[Riggle]: Yeah . . . I was prescribed Depakote, but I - - I quit taking Depakote months ago.

THE COURT: And was that for depression or - -

[Riggle]: Yes.

THE COURT: Okay.

[Riggle]: It was for bipolar depression.

THE COURT: Okay. And you're not taking that anymore?

[Riggle]: No.

THE COURT: Does that affect your ability to understand anything going on around you?

[Riggle]: No, ma'am.

*Id.* at 25-26.

[7] The court informed Riggle that it recommends everyone be represented by counsel and again stated the serious nature of the case. Riggle indicated that the charges were very serious and that he understood them. He agreed to follow the rules of court if he were to proceed *pro se*. With respect to Count IX, the court explained that the State did not specifically name an alleged victim

and that the State's proof at trial had to be that the victim was an individual who was or who appeared to be under sixteen years of age. Riggle stated: "That part I didn't understand very well." *Id*. at 31. The following exchange occurred:

> THE COURT: That's okay. And by your questions, that causes the Court some concern that you don't understand the allegations or the discovery that's been filed in this case.
>
> [Riggle]: I haven't seen the discovery.
>
> THE COURT: Okay. How are you going to proceed to trial if you haven't reviewed all your discovery?
>
> [Riggle]: I'm going to wing it.
>
> THE COURT: You're going to wing it.
>
> [Riggle]: Yes, ma'am.

*Id.*

[8] Upon the court's questioning, Riggle confirmed that he had earned a GED with honors and completed his freshman year of college. Riggle indicated that he had no legal training and that he understood that his attorney was licensed to practice law in Indiana, had been doing so for many years, and had skill and expertise. He also indicated that he understood representing himself could be hurtful to his defense and that he might lose. Under further questioning by the court, Riggle indicated that he fully understood he would be on his own, he was expected to abide by the same standards as a licensed attorney, the State would be represented by licensed attorneys, his attorney knew how to review and

examine documents or testimony, prepare any pre-trial motions, make objections, review the court's instructions, and make favorable opening and closing statements on his behalf, and that he would be unable to later claim ineffective assistance of trial counsel.

[9] The following exchange then occurred:

> THE COURT:  Now, with respect to the way a trial works, I know, because we were here together, you have been to trial on one other case where you were represented by counsel.  So I know from the defendant's chair you observed all that happened in that trial; correct?
>
> [Riggle]:  Yes, Your Honor.
>
> THE COURT:  Okay. But—
>
> [Riggle]:  I think I could do a better job on my own.

*Id.* at 36.

[10] Upon further questioning by the court, Riggle indicated that he understood he was expected to follow all the rules of court and the Rules of Evidence, a closing argument could not be based on items not in the record, it was his responsibility to preserve issues for appeal, the State would have the right to cross-examine him if he chose to testify, and he understood the charges against him and the possibility that there could be lesser included offenses. The court advised him that when defendants proceed *pro se*, it tries to provide standby counsel to sit in the back of the courtroom to discuss rules of evidence.  The following exchange occurred:

[Riggle]:  Yeah, I – I understand I am – I am completely out of my league here, Your Honor.

THE COURT:  Okay.  And is there – this acknowledgement by you of that kind of screams to the Court that you should be represented by counsel.  Is there – is it – is it that you want more time to talk to your counsel?

[Riggle]:  I don't – I don't understand the question, ma'am.

THE COURT:  Well, your answers to the Court, I mean, is - - are making a clear record that you're not qualified legally.  We know that.  As your lawyer said, the law does state that individuals, even though they're not qualified in the law, they can represent themselves if they want to.  But you're acknowledging in all of my questions really that you're not that well versed on any of these legal issues.  Your attorney is very well versed

[Riggle]:  I know.

THE COURT:  - -  on these issues.

[Riggle]:  I don't even watch *Law & Order*, Your Honor, so I – I –

THE COURT:  You what?

[Riggle]:  I said I don't even watch *Law & Order*, so I am - -

\* \* \* \* \*

[Riggle]  - - I am completely out of my depth.  But at the same time, I feel like nobody cares about my life as much as I do.  So I'm going to give it my best shot, and - - and that's going to be that.

\* \* \* \* \*

THE COURT:  Is it - - and you're ready to go to trial today?

[Riggle]: I really would like a continuance, but I'm going to - - I mean, just time to get all of the discovery and everything. But you know, I'm - - I'm not - - I'm not going to press that issue if the State's ready to go and the witnesses are here and - - and - - you know, I - - I realize this case has been dragging on for over a year now.

And just - - I'm just ready to get it over with. I'm already - - like I said, Your Honor, I'm - - I'm already doing the rest of my life in prison.[1]

* * * * *

THE COURT: Okay. All right. So what are you saying, Mr. Riggle? That - -

[Riggle]: I'm ready to go to trial.

THE COURT: Okay. You understand that you're going to do so at your own detriment.

[Riggle]: I understand I'm probably going to lose, Your Honor.

* * * * *

[Riggle]: I'm - - I'm- - I'm oh and one at trial with an attorney. I don't know what I would be by myself. That's - - that's where I sit.

And I don't feel as though if I get a continuance, it - - I don't feel it would help me to be one and oh any more than going today would. There's just nothing to learn from - - from time at this point . . . .

---

[1] Riggle had previously received a total sentence of sixty years for three counts of child molesting as level 1 felonies under a separate cause number. *See Riggle v. State*, No. 49A02-1704-CR-787, slip op. at 3 (Ind. Ct. App. December 29, 2017).

THE COURT:  No.  But, I mean, with respect to your preparing of your defense, whatever that might be - -

[Riggle]:  I'm- - I'm

THE COURT:  - - or reviewing the discovery and so forth - -

[Riggle]:  Right.

* * * * *

[Riggle]:  I'm just going to wing it today, Your Honor, if - - if you allow that.

THE COURT:  I really - - I mean, I was - -  I was right there, as far as your right to represent yourself and you giving you *pro se* status.  But winging it today is a little concerning to the Court.

[Riggle]:  Your Honor, if I may, if you put it out for two weeks, a month, two months, however long, on that day I'll just be winging it, more or less, you know.  There's - - there's no way for me to adequately become an attorney overnight.

THE COURT:  I understand and - - but the Court has, over - - over the years - - and we currently still have some defendants on our dockets that are representing themselves.  And quite frankly, it's the Court's experience that they usually try and get as many continuances as they can because they're, you know, really trying to get up to speed on those issues that they think are important to their case.

I mean, your - - you're saying you're ready to wing it, and you're always going to wing it.  I mean, why wing it when you have an attorney?

[Riggle]:  I'm going to give it my very best effort.  And I'm not sure that anybody else would try as hard as I would.

THE COURT:  Well, I understand the sentiment that no one cares about your case as much as you do.  I think probably every

defendant should feel like that in some sense, that you know, it's most important to them.

But my guess is that in most of our cases, the - - the person right next to the defendant who cares the most about the case is the defendant's attorney. So - - and again, we're going back to that person is an individual who's trained in the law and ready to represent you.

But at this point, I don't - - I don't think I can make more of a record than I've already done that the Court has cautioned you about doing this, that the Court recommends that you be represented by counsel. But you know, my job is also to - - to follow the law and the Constitution. And I take an oath to do that.

And if you, knowing all of these dangers, still wish - - wish to represent yourself, I have to give you the right to do that. So I will show that at this time, the Court is granting the defendant's right to proceed *pro se* in this matter.

Now, I have a document that I used when I went through all the questions with you. I'd like to send it out to you so that you can review it and - - and then fill out your certification part as the defendant.

[Riggle]: (Complying.)

THE COURT: Do you want a copy of that?

[Riggle]: No.

THE COURT: All right. And are you - - so you want me to - - then at this point I will grant Mr. McShane's motion to withdraw as well? That's what you want is that right?

[Riggle]: Yes.

THE COURT: Okay. We'll show that's granted. And so now let's turn to our trial. Are you ready to proceed to trial at this time?

[Riggle]: I am, Your Honor.

*Id.* at 44-55.

The document referenced by the court and signed by Riggle states:

### COURT ORDER REGARDING DEFENDANT'S REQUEST TO PROCEED *PRO SE*

The Court hereby grants the defendant's request to proceed *pro se* and certifies that it has advised the defendant:

\* \* \* \* \*

14. The defendant understands the charges against him, the possibility that there may be lesser included offenses, and the possibility that there may be defenses or mitigating circumstances that the defendant may not be aware of.

The court further notes the defendant has assured this court:

1. The defendant has sufficient educational background and mental capacity to conduct his defense.

2. That no one has made any promises or threats to get the defendant to waive his right to counsel and the waiver is made freely, knowingly, voluntarily, and understandingly.

3. The defendant understands he will receive no special treatment from the court due to his lack of legal expertise.

4. The defendant believes it is in his best interest to defend himself despite the advisement of rights listed above.

5. The defendant still elects to waive his right to counsel and proceed *pro se*.

**DEFENDANT'S CERTIFICATION**

As the defendant in this cause, I certify that the court has advised me of the rights listed above, has answered any questions I have about those rights, and has given me the opportunity to consult with counsel about these rights. With full knowledge of these rights and advisements, I still wish to proceed by representing myself without benefit of counsel.

Appellant's Appendix Volume 2 at 150-151. Riggle refused standby counsel. During the trial, he cross-examined the State's witnesses, recalled one of the State's witnesses in his case-in-chief, gave a closing argument, and objected during the State's closing argument. The jury found him guilty, and the court sentenced him to an aggregate term of seventy-five years.

*Discussion*

[12] The issue is whether Riggle made a knowing, voluntary, and intelligent waiver of his right to counsel. The Sixth Amendment, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to counsel before he may be tried, convicted, and punished. *Hopper v. State*, 957 N.E.2d 613, 617 (Ind. 2011) (citing *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525 (1975)). "This protection also encompasses an affirmative right for a defendant to represent himself in a criminal case." *Id.* (citing *Faretta*, 422 U.S. at 807). "[W]hen a criminal defendant waives his right to counsel and elects to

proceed *pro se*, we must decide whether the trial court properly determined that the defendant's waiver was knowing, intelligent, and voluntary." *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003). Waiver of assistance of counsel may be established based upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *Id.* "There are no prescribed 'talking points' the court is required to include in its advisement to the defendant; it need only come to a considered determination that the defendant is making a voluntary, knowing, and intelligent waiver." *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001) (quoting *Leonard v. State*, 579 N.E.2d 1294, 1296 (Ind. 1991)). The Indiana Supreme Court has held that it is sufficient that the trial court make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Leonard*, 579 N.E.2d at 1295 (internal citation omitted).

[13] In reviewing the adequacy of a waiver, we consider four factors: "(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed *pro se*." *Kubsch v. State*, 866 N.E.2d 726, 736 (Ind. 2007) (quoting *Poynter*, 749 N.E.2d at 1127-1128 (quoting *United States v. Hoskins*, 243 F.3d 407, 410 (7th Cir. 2001))), *reh'g denied*, *cert. denied*, 553 U.S. 1067, 128 S. Ct. 2501 (2008). It is the trial court that is in the best position to assess whether a defendant has knowingly

and intelligently waived counsel. *Poynter*, 749 N.E.2d at 1128. Under the fourth factor, "the court considers whether the defendant's decision appears tactical or strategic in nature or seems manipulative and intending delay, inferring knowledge of the system and understanding of the risk and complexities of trial from more deliberative conduct." *Id.* at 1128 n.6. We will "most likely uphold the trial judge's decision to honor or deny the defendant's request to represent himself where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion about the defendant's understanding of his rights and voluntariness of his decision." *Id.* (quoting *Hoskins*, 243 F.3d at 410).

[14] Riggle concedes that "the trial court engaged in what was, overall, an extensive inquiry into his decision to proceed *pro se*" and that the first and second *Poynter* factors "weigh in favor of finding that [he] made a knowing, voluntary, and intelligent waiver of his right to counsel." Appellant's Brief at 14-15. However, he argues that "when the trial court, for all practical purposes, ignored [his] assertion that he suffers from a serious, untreated mental illness, the trial court's colloquy was for naught." *Id.* at 18. He contends the court did not adequately address the context and circumstances in which he made his request. He asserts that the record is unclear on whether his decision to proceed *pro se* was tactical because the court did not sufficiently inquire into his mental illness and cites *Drake v. State*, 895 N.E.2d 389 (Ind. Ct. App. 2008).

[15] The State asserts that the trial court was correct in allowing Riggle to proceed *pro se*. It maintains that the court questioned Riggle extensively regarding his

decision to proceed without counsel and gave him every opportunity to change his mind and that he repeatedly asserted his desire to represent himself *pro se*. It maintains that Riggle understood he was waiving his right to counsel and that he understood the consequences of that waiver. It also asserts that the record sufficiently establishes that Riggle was not suffering from a mental health condition that affected his ability to understand his charges, his duties as a *pro se* defendant, or the adverse consequences of self-representation that the court warned him against.

[16] To the extent Riggle cites *Drake*, we find that case distinguishable. In *Drake*, we held that the first and second *Poynter* factors weighed in favor of finding that Drake did not make a knowing, intelligent, and voluntary waiver of his right to counsel because Drake was not adequately advised about or aware of the dangers and disadvantages of proceeding without counsel. 895 N.E.2d at 394. Further, there was no specific inquiry into Drake's background, education, or abilities. *Id*. at 395. Drake's standby counsel filed a motion for a competency evaluation, which placed Drake's competency into question. *Id*. Drake's father stated that he believed that Drake had manic depression and was a "conspiracist in his thought process," and several witnesses testified that Drake had told them that his life was in danger and that there was a potential conspiracy to murder him. *Id*. We held that "the sparse record regarding Drake's background, education, and abilities, coupled with Drake's uncertain mental state, leads us to weigh this factor in favor of not finding a voluntary, knowing, and intelligent waiver of the right to counsel." *Id*. We concluded that

Drake did not make a voluntary, knowing, and intelligent waiver of his right to counsel. *Id.* at 396.

[17]     Unlike in *Drake*, Riggle concedes that "the trial court engaged in what was, overall, an extensive inquiry into his decision to proceed *pro se"* and that the first and second *Poynter* factors "weigh in favor of finding that [he] made a knowing, voluntary, and intelligent waiver of his right to counsel." Appellant's Brief at 14-15. Indeed, the record reveals that the court engaged in an extensive colloquy with Riggle regarding the dangers and disadvantages of self-representation and that he insisted on proceeding *pro se* and rejected standby counsel. The record establishes that the court asked if Riggle had ever been treated for any mental illness, how long ago he received treatment, if he received any treatment for any mental health issues since he was charged in this case, whether he was continuing to take his medication, and whether his not taking medication affected his ability to understand anything going on around him. Riggle testified that he had been treated for manic depression and bipolar disorder over a decade earlier, that he stopped taking a medication months earlier, and asserted that not taking medication did not affect his ability to understand anything going on around him. He engaged in responsive and coherent exchanges with the trial court. Further, the record reveals that his decision to proceed *pro se* was tactical in nature as he testified that he believed he could do a better job on his own, he had concerns about how often his attorney had seen him, and that no one cared about his life as much as he did. We conclude that the trial court's inquiry and Riggle's responses were sufficient

to establish that Riggle made his decision to represent himself knowingly, voluntarily, and intelligently.

## *Conclusion*

[18] For the foregoing reasons, we affirm Riggle's convictions.

[19] Affirmed.

Bailey, J., and Crone, J., concur.